Good morning, Your Honors. Gary Kopus of the Nashville Bar, representing the Plaintiff Appellant Elizabeth Wilburn. This is a case under the Federal Tort Claims Act. It started out as I thought to be a fairly simple claim to be made, and we're before Your Honors today on these issues about the discretionary function exception and the independent contractor exception under the Act. There are some matters which I want to at least give the Court some background on this. I think it's very important. This involves an independent contractor employee stereocycle that removes waste, if you will, from the VA hospitals. My client was in charge of taking out from the hospital these used sharps, I guess you like needles that are used to draw blood or make injections or whatever, and they're known to contain HIV virus on them. For that reason, the handling of these objects when they go through the elevators got to be very careful. The backdrop I'm trying to give the Court is that it was common knowledge before any prior effect in Nashville that this VA hospital had a very substantial mistake in infecting several veterans with HIV. It made all the news lines and newspapers. So in that context, we've got to employ handling this type of material. When counsel filed the defense, he raised the affirmative defense of the independent contractor but not the discretionary defense. I had already tried the case, if you will, in the state court and with extensive discovery, which I later gave to counsel from that, and I could find no breach of any duty by the maintenance people of the elevators or the people that would do the inspection. In Tennessee, it's mandatory that all elevators be inspected by the state, but the government inspection is waived by that statute. So the government has to have its own inspection process, and that's the reason that the inspection people was brought into that lawsuit. So I felt comfortable that I didn't, that that exception would not really prevail, and I'm confident today it would not prevail because there's no breach of duty shown by that independent contractor at all. They went in there and performed the contract, did what was supposed to do, and they had no notice of any event that we described in our lawsuit that put them on notice of any foreseeability of any harm coming down from the elevator operation. The harm here is that because the plaintiff had to be so careful in moving all of these sharps in huge containers through the elevator, had to do it in a slow manner, and the timing sequence for the closing of the elevator had to be changed. In the deposition, the record of the modus elevator, that elevator is not there anymore. They now have a new system to where you punch a computer button to change the sequence of the closing. So all these problems we're having today would not have existed under the new system. Counsel, can I ask you, it seems like in the pleadings or the briefing you conceded on behalf of your client that there was nothing wrong with the designated elevator speeds and that they complied with the applicable codes. So why is it that the discretionary function exception does not apply in these circumstances? I'll just stop there. Why is the discretionary function exception not applicable? Well, I go back to the Supreme Court case, the Berkovich case, which seems to be the benchmark, most all of the decisions concerning this, even this circuit seems to reference the Berkovich case. Justice Marshall said that the first inquiry about the exercise, like you said, of this discretion, it is the conduct, the first consideration, he says we must first consider whether the action is a matter of choice. When that contract was entered into with Otis Elevator, that they would comply with the standards of the industry for elevators, that matter of choice was not ever brought up at that time. There Now, I guess as a side note, when I got out of law school, I started out as an attorney for the Corps of Engineers and I was involved in in-house counsel making, you know, referencing things of that matter. And what would happen to that contract would be that the discretion would enter the picture whenever there was a need for a change of that sequence for some reason other than the contract. So under the Berkovich, there had to be a conduct matter, the word choice had to be made. There had to be an A or a B. Do we do A or do we do B? When that contract was entered into, that never came up. And based on the HIV history of that hospital, there's no doubt in my mind that if that work order, which is in my brief, had left environmental office to engineering to the contracting operational representative on that contract, based on the HIV history at that time, they would have fixed that timing. There's no doubt in my mind. If discretion had been exercised, they would have fixed that timing. The in-counsel never did. But the discretionary exception I'm sorry, I didn't know I'd get carried away. The discretionary exception doesn't apply just to doing something that is a discretionary activity. It also applies to not doing something that's a discretionary activity. Correct, but you've got to make a choice. You've got to make, you've got to, your honor, the matters got to be before you, before, you've got to be there. Are you saying that it had to be before them at the time that the contract was entered into? I did not. This morning when I left to come here, I did not go to Dayton. Nobody can say that I didn't. Don't head down that kind of a road. But I know it. I'm asking you a specific question. You started out this discussion by saying at the time this contract was entered into, they didn't ever look at this choice. Okay, so you must then, if you're not saying that that's the point we have to look at, then you must be saying at some later date, they should have looked at this choice. Well, that choice was not in existence at that time. This event had not occurred. There's no knowledge that anything like this would ever happen. When that contract was entered into, this event was not foreseen. That was not even in the genre. So you're saying that because it couldn't have been foreseen then, the discretionary exception never would come into play? If it was foreseen then, if it was considered at that time, then it would have come into play, your honor, you're correct. But it was not. It was not into play. In fact, the discretionary exception was not brought into this lawsuit until about 60 days or three months or two months before trial. My understanding from counsel is that the Justice Department asked that that be interjected on the motion for summary judgment, although the motion of summary judgment was not heard, the jurisdictional motion was heard. I believe at that time, because of the VA situation, that they were looking to get as much input from the courts as they could of using the discretionary defense. If the court rules in favor of this discretionary event, then any, no matter what happens after this benchmark happens down the road, any decision was made back here. Therefore, this here cannot be pursued. I'm having a hard time understanding your argument. Is it that the discretionary function exception does not apply under these factual circumstances because the accident was foreseeable and therefore avoidable? Is that what you're arguing or are you arguing something else? I'm saying that the cause of the accident, I mean, the cause of the harm that was, what act was done? What happened to cause this to happen? The complaint made by the employee, Ms. Wilbur, that was given to environmental was never left that person. That person made the decision, apparently, I guess, just to drop it and not set it up the system. To me, that's, under all of his depositions, he didn't have any discretion. He had to put it into the system. Your client submitted complaints about the elevator defect and the elevator speed that would jeopardize her safety and well-being. Therefore, there was prior notice of this defect or this negligence situation that was not addressed or remedied. Therefore, your client suffered the injuries and so on. You're saying that as a result of that, the discretionary function exception would not apply. Is that your argument? No, because the But if that's your argument, why is it under those circumstances is it that the discretionary function exception does not apply? Do you have any case law or anything like that that would guide us under these circumstances? Well, first, when I look at here, it says, first, we must first consider whether the action is a matter of choice. The only action we have is the action that that environmental representative took when he received that complaint. What choice did he make at that time? Did he send it up to the system to be looked at? Did he put it in the system or did he just ignore it? That was the, and to me, there was no discretionary function in that employee. It says here, does that apply if it's the product of any policy, whatever, to how he used to act on it. He told me in his deposition that the policy, how he used to act was that when he received a complaint, he was to immediately, that's what he said, I was to immediately inject it into the system. That was his testimony. And then I asked him this. I said, if you needed to change the sequence of the timing, would you do it by a work order? He said, yes, you, in his deposition, it's there. Yes, you would. So what I'm trying to say is that if that act to be carried out, if he exercised due care, if you will, under the Tennessee state law on that situation where he is under an obligation to inject that into the system, this would not have occurred. This injury would not have occurred. All right. Thank you. Anyway, that's the best I can do. Thank you. Thank you. Good morning, Your Honors. The police court, Michael Roden from the U.S. Attorney's Office in Nashville, Tennessee for the United States of America. Just to point out one thing, it is true that the discretionary function exception argument was raised rather late in the case, and I'm going to just tell you why. It's my fault. I missed it. We went through discovery, and as we went through discovery, I kind of started seeing where the facts were, and it just kind of dawned on me that this was a discretionary function issue, and I ran it up the flagpole to DOJ, which asked for approval, of course, for raising it, and they said, they politely pointed me to a case law that said that, yeah, this is a discretionary function. So to the extent that it was raised late, that's on me, but it's jurisdictional, and it can be raised at any time. The gist of the appellee's argument is that the VA did not pass on to the contractor, to Otis, the complaints that she allegedly made to Mr. Langeth, Leon Langeth, and perhaps others, that this elevator was closing too fast on her, and she was having difficulty with it. Her testimony was, I think she had five previous near misses before the incident in which she was injured. But as the district court correctly found, whether or not he was negligent in not passing it on to Otis, who had the contract, that's irrelevant, because that goes to whether he was negligent or not, and if the discretionary function exception applies, then it doesn't matter if the government employee was negligent. Well, that exception couldn't apply in any and all circumstances, could it? I mean, there's a hole in the middle of the elevator, and somebody would fall down the elevator shaft. You wouldn't get into whether the discretionary function exception would apply there. Certainly. But the testimony was developed, and in hindsight, it was probably a good thing we went through the discovery. The testimony of the Otis 30B6 representative that was noticed for a deposition, he testified that as long as the timing of the elevator doors was within code, there was no need to change them. The argument is that this plaintiff was required as part of her job responsibilities to do contraption into the elevator, and it took additional time, not within the purview of these applicable elevator codes, and there wasn't enough time, it jeopardized her safety, and she complained and provided notice, and then nothing was done, and so the accident maybe was almost inevitable. Correct, Your Honor. It almost sounds like an allegation of willful misconduct and willful negligence or something of that nature. Let me explain why it's not. First, I think we can all agree that no workplace can ever be 100% safe for everybody. The plaintiff testified that the person who trained her to do the job warned her, hey, watch out for these elevators, they close pretty fast, and that person who trained her testified herself that I think she had been near miss one time, or maybe on one or more occasions, but there had never been an actual injury, just near misses where they would have to really hurry up to get their cart into the elevators, and Ms. Welburn, the plaintiff testified that on five occasions she made complaints about the doors closing too fast. She says, Mr. Langis, I think in her deposition testimony she indicated maybe one other person she made the complaints to. There's no records of any of that, which I think is odd, but we have to go on assuming all facts in her favor that she did make these complaints. Mr. Langis' testimony was that the general policy, he used the word generally, it was not a requirement that he do anything, but the general thing is when he got a complaint he would put in a work order, and if the work order, if the nature of the work order was such that it came under the contract, in this case with Otis, then the contractor would take care of it. Mr. Langis, again his testimony is he had been several years away from all this, he had no memory of it, but his testimony is that that's what he would have done, and if he knew that Otis was not going to do anything about the timing because of the, their policy was as long as it was within code, then there would be no need to send it on up. That would be the choice that he made, and I would submit that that is squarely within the discretionary function exception. We sat in a brief, the principle that the needs of the many outweigh the needs of the one. I don't know if Mr. Spock has ever been quoted in Sixth Circuit briefs before, but it's the first time I've ever done it. But that's it, that's the kind of, that's the nature of the discretionary function, to make these kind of policy decisions as to whether it's more cost effective to do it this way or that way, even if you might have a situation that is uncomfortable for one employee as opposed to the greater needs. Those are the kind of policies that were issued. I take it this elevator didn't have the kind of control where you could press a button and turn a key on a control panel to keep the doors open for a longer time. You didn't, that elevator isn't equipped that way? You know, Your Honor, I don't believe there was any testimony in that regard developed below. It was admittedly an older elevator. It was eventually replaced by a new bank of dollars. I don't believe there was any testimony to that regard as to whether it could be held open. I may be corrected on that, but I don't recall that, Your Honor. We have to look at what the conduct is at issue, and the conduct first is the decision of the VA not to change the timing of the doors of the service elevator and also to delegate to Otis and Bayline the duty of maintaining and inspecting the elevators in a manner consistent with the applicable standards. And the decision to maintain the timing of the doors at the uniform setting, consistent with the codes, rather than modify to satisfy one person, I would submit is the essence of a discretionary act. I would say it's analogous to the case law about scope of employment, where federal employees are sued and the question is whether they are in the scope of employment. You don't look at the act itself. Doing a tortious thing is never within the scope of a government employee's employment, but you look at what's going on around that. I would say it's the same here. The issue is not his failure to send it up or put in a work order and let Otis look at it, which by the way, he says Otis didn't do anything wrong, so that's not a really consistent argument. But in the same token, you look at what is surrounding, what is the nature of that act that he's doing. And that's why we submit this as part of the discretionary function. And it's irrelevant whether the employee actually did that balancing act of economic, social, political choices or whether it was just oversight on his part and we cite the Engle case in our brief, a 1996 case from the Sixth Circuit. The decision to delegate out the maintenance and repair of the elevators is clearly a discretionary act. We cite a long line of cases on that, including the Berrig Airlines and the case involving the Reagan Library. And I would also point out that despite counsel's statement that he seemed to be conceding that I'm not mistaken the last two issues cited in his brief deal with Otis' negligence. And the VA of course would be shielded from any negligence by the contractor under the independent contractor exception. One more point I think is worth making. The plaintiff's testimony was that she was told by a VA employee who arrived on the scene after she was injured that a spring broke and she apparently thought enough of that to repeat that to her doctor. When she went to the doctor later, the doctor notes that it's in the record, it says, the lady said that the elevator spring broke. And that's also consistent with her testimony that this particular incident where the doors closed, closed even faster than they did before. In prior times she said she had near misses but she made it. Her testimony was this time it was really fast, which would be consistent with a spring breaking. And I would submit that a spring breaking is not something that could be foreseen as long as everything else was up to par and again the record is going to show that these elevators were inspected just I think days before this incident. Well, I mean I assume after the accident the government had Otis Elevator come out and inspect the elevator to make sure there wouldn't be any continuing problem and if there was a broken spring or something that would have shown up in the inspection, wouldn't it? It would, Your Honor. And again, I don't want to get into the facts of the case because again we have to assume all facts in the favor of the plaintiff at this stage. But it's just really weird, Your Honor, that there is no record of any of this. I've been at AUSA doing FTCA cases for 28 years and this is the first case I can remember where we can't concede if it went to trial. We couldn't concede that the incident even took place. Usually the argument is, well, the plaintiff wasn't hurt that bad or somebody else is at fault. It's just really strange. But didn't the VA do an incident report of the accident? There's none, Your Honor. And there is a report from her employee, the contractor, Stericycle, that she reported this incident. And it's just really strange. I've heard some bad things about the VA, but it's hard to believe that there would be an accident that resulted in an employee being hospitalized and there wouldn't even be an accident report. Yes, Your Honor, it's very weird. And again, one thing to say about the government is we document everything. Sometimes out the wazoo. But in this case, no, there's nothing. And again, I don't want to argue the fact of the case, but I do think that it's, I think I put a footnote into that because I think it's probably where it belongs. It's just very strange that there is no documentation of any of this, not from Otis, not from the VA. And the only thing Stericycle has, the plaintiff's testimony was she complained to Stericycle on these same five previous occasions. They have no records of this. It's odd. If the panel has any other questions, I'll try to answer them. If not, that's all I have. Thank you. I think we have none. Thank you, counsel. I'll be very quick, Your Honor. Just a few comments. I just want to, in response to what he said, on the, he made some statement that Mr. Langerth said in his deposition that if there was any, if the sequence was within the range on the contract, he would not have sent it up. And of course, I took the deposition. In fact, I flew to Tulsa, Oklahoma to do it because that's where he was working. And I've read it several times, but I can't find that language in there. So I just want to, I would just ask the court to, ask the clerks to read the deposition, see if they can find it in there. The spring break, that was, that was a hearsay statement. Whoever made the statement could not be identified. I tried my very best in the state court to find that person. I couldn't find that person. And I, again, that's, the spring break is, it was inadmissible. And I think the trial judge, she mentioned that in her memorandum, that that could not be considered because it was hearsay. The, I'm just like counsel, I'm befuddled about no record of all this. And I just briefly, just briefly tell the court that when we had a major incident at the Corps of Engineers, in this case, the lock gate got torn off and all the guards traveling from Tennessee lined up to the Ohio, it all got backed up. And when we have a major incident like that, they have, they form a panel because they put an attorney on that panel. And I had to prepare a report. But I feel like in this case, that when we had the big HIV incident, that the same thing happened. There was a panel formed, attorney in the house, had to prepare a report. And I'm sure he asked of all the department people, give me all the records you have of HIV maintenance. And so that backdrop, some reason after that, it seemed like all the HIV stuff sort of just was not there. And that's, I'll leave it with the court. Thank you. Thank you very much.